**AMERICAN POSTAL WORKERS UNION, AFL–CIO, Appellant,**

v.

**UNITED STATES POSTAL SERVICE, Appellee.**

No. 93–5397.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 3, 1995.

Decided April 21, 1995.

**360**

Darryl J. Anderson, Washington, DC, argued the cause and filed the briefs for appellant.

Robert L. Shapiro, Asst. U.S. Atty., Washington, DC, argued the cause for appellee. With him on the brief were Eric H. Holder, Jr., U.S. Atty., John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., and Brian M. Reimer, Atty., U.S. Postal Service, Washington, DC.

Before: WALD, SILBERMAN, and TATEL, Circuit Judges.

SILBERMAN, Circuit Judge:

American Postal Workers Union, AFL–CIO, appeals from a district court order enforcing an arbitrator's award in favor of the United States Postal Service. Appellant claims that the award was procured through "undue means," because the arbitrator considered an arrest record that had been expunged under Connecticut law. We affirm the district court.

I.

Madeline Goodwin was employed at the Post Office in Stamford, Connecticut. On May 29, 1991, Goodwin was involved in an incident with two supervisors, Robert Townes, Jr., and George Reale. According to Townes and Reale, Goodwin left her work area, disobeyed orders to return to her work, became verbally abusive, struck Townes on the arm, and was generally "disrespectful." After several unsuccessful attempts to per-

suade Goodwin to leave the workplace, Reale contacted the postal police, who in turn asked the local police to escort Goodwin out of the postal facility. The local police arrived, Goodwin refused to leave the facility, and she was arrested and removed. Criminal charges were brought against Goodwin based upon her conduct.

Goodwin disputed the supervisors' characterization of the events. Their version was reflected, however, in a Supplemental Investigative Memorandum Postal Inspector Feeney drafted in July 1991. Goodwin did not offer Feeney a competing version, despite the Inspector's efforts to get her statement. The state law criminal charges against Goodwin stemming from the incident were dropped on August 5, 1991, in a proceeding before a state judge. Feeney submitted a final Supplemental Investigative Memorandum on August 14, 1991.

The Postal Service then discharged Goodwin, who also had a past record of disciplinary infractions. On behalf of Goodwin, the American Postal Workers' Union brought a grievance challenging Goodwin's discharge, which ultimately led to arbitration. The arbitrator credited the testimony of Townes and Reale, and found Goodwin's version of the events in question "unbelievable"; she relied at least in part on the Connecticut arrest record, over the objection of the union representative, as "probative support for the credible testimony" of Townes and Reale. (The union representative objected on grounds that the charges against Goodwin had been dropped.) The arbitrator thus determined that the supervisors had acted properly and that Goodwin's conduct in light of her past record was sufficient to support removal.

The union brought suit in district court to overturn the arbitrator's award. It was, and is, claimed that the Postal Service procured the award through "undue means" in violation of § 10(a) of the Federal Arbitration Act. *See* 9 U.S.C. § 10(a) (1988) (award may be vacated where "procured by corruption, fraud, or undue means."). The alleged "undue means" was the introduction into evidence of Goodwin's arrest, notwithstanding a Connecticut statute which bans the "dissemi-

nation of an arrest record by any law enforcement agency." *See* Conn.Gen.Stat. § 54–142a(e) (West Supp.1995) ("Erasure of criminal records"). The district court rejected the union's claim, concluding that the union had waived its objection to the disputed evidence by not raising the Connecticut statute before the arbitrator, and that, in any event, neither "fraud" nor the term "undue means" encompasses the union's claim. This appeal followed.

## II.

The union reiterates before us its argument that the alleged violation of the Connecticut statute constituted "undue means." It claims that its representative before the arbitrator, a non-lawyer, could not be expected to be familiar with Connecticut law, so that the district court erred in concluding that the union waived its claim by not raising it before the arbitrator. The district court, it is argued, improperly extended to an "undue means" case a requirement courts have imposed on parties seeking to set aside awards on the grounds of fraud. *See, e.g., A.G. Edwards & Sons, Inc. v. McCollough,* 967 F.2d 1401, 1404 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 970, 122 L.Ed.2d 126 (1993). The Service responds that there is no good reason why the union was not obliged to raise its objection relating to the arrest record before the arbitrator—whether its claim is based on fraud or undue means. The union, after all, chose to use a business agent as its advocate and it must live with the consequences. The Service, moreover, was not aware of the Connecticut statute, so even if it could be thought "a law enforcement agency," it should not be charged with "procuring" (*i.e.,* actively gaining or purposefully influencing) the award through undue means. Finally, the parties dispute whether or not the arrest record was actually "disseminated" within the meaning of the Connecticut statute, and whether it was decisive in contributing to the award.

██ Our scope of review of an arbitrator's award interpreting a collective bargaining agreement is extremely narrow. *United Steelworkers of America v. American Mfg. Co.,* 363 U.S. 564, 567, 80 S.Ct. 1343, 1346, 4

L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578, 80 S.Ct. 1347, 1350–51, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960); ("*Steelworkers Trilogy*"); *Hotel Assoc. of Washington, D.C., Inc. v. Hotel & Restaurant Employees Union*, 963 F.2d 388, 389 (D.C.Cir.1992); *Kanuth v. Prescott, Ball & Turben, Inc.*, 949 F.2d 1175, 1178 (D.C.Cir.1991). Indeed, the premise of appellant's argument—that the FAA controls this case—is by no means obvious. The Act does not apply to "contracts of employment," 9 U.S.C. § 1, and federal courts look to it only as guidance in fashioning federal common law governing suits for breach of contract (which include challenges to arbitrator's awards) under § 301 of the Federal Labor–Management Relations Act. *See United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 40 n. 9, 108 S.Ct. 364, 372 n. 9, 98 L.Ed.2d 286 (1987).

 We think it fair to assume, however, that even under our limited scope of review of an arbitrator's interpretation of a collective bargaining agreement a party's use of certain kinds of techniques to gain an award could be thought to authorize our rejection of the award. If an arbitrator were bribed (corruption) or a party were guilty of fraud in obtaining an award, it could be said that the result was equivalent to an arbitrator "dispensing his own brand of industrial justice." *See Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. at 597, 80 S.Ct. at 1361. Appellant would have us extend that reasoning by applying its definition of "undue means" in this case. The union's difficulty, however, is that even under the FAA no court has ever suggested that the term "undue means" should be interpreted to apply to the submission of evidence that is merely legally objectionable. *See A.G. Edwards*, 967 F.2d at 1403–04 (defining "undue means" as conduct "that is immoral if not illegal"; held not to apply to defendant's raising of frivolous defenses during arbitration, or "sloppy or overzealous lawyering"); *Remmey v. Painewebber, Inc.*, 32 F.3d 143, 148 (4th Cir.1994) ("undue means" held not to include potential *arbitrator* conflict of in-

terest where fully aired, or past disciplining of arbitrator). Particularly as applied to review of a labor arbitration, undue means must be limited to an action *by a party* that is equivalent in gravity to corruption or fraud, such as a physical threat to an arbitrator or other improper influence. That definition cannot reasonably be applied to a situation in which a party unknowingly used an arguably inappropriate (under *state* law) document or record. It seems to us gross hyperbole to accuse the Postal Service of undue means in a case like this. *See Shearson Hayden Stone, Inc. v. Liang*, 493 F.Supp. 104, 108 (N.D.Ill.1980) (defining "undue means" as requiring bad faith conduct). The Service's action here could hardly be thought *malum in se*.

Thus, although the union characterizes its claim as alleging undue means, it really challenges the award on grounds that it violates public policy. In its opening brief, the union argues that it does not matter whether the Service knew of the Connecticut law or not. If the award was secured because of the Service's violation of that law, to permit the award to stand would violate public policy. But the union's reply brief expressly disavows that its challenge is based on the "public policy exception" to the principle that labor arbitrators' awards are final and binding on the parties. Because the union forfeits its public policy argument, we do not decide whether the public policy exception applies here. We do note, however, that the Supreme Court has made clear that to overturn a labor arbitration award as contrary to public policy is a daunting task. *See W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 766, 103 S.Ct. 2177, 2183–84, 76 L.Ed.2d 298 (1983). An alleged violation of Connecticut law would be relevant in this sort of case only if the Connecticut statute reflected a public policy that can be described as "well defined" and "dominant." *See Misco*, 484 U.S. at 43, 108 S.Ct. at 373–74; *W.R. Grace*, 461 U.S. at 766, 103 S.Ct. at 2183–84. Appellant does not argue that the Connecticut law can be so characterized.

 We do not think it necessary, therefore, to determine whether the Postal Service

can be thought a law enforcement agency under Connecticut law, and if so, whether the arrest record was "disseminated" in this case. Nor need we decide whether the union waived its public policy argument by not raising it before the arbitrator. Even if the Postal Service's actions could be regarded as contrary to Connecticut law, that state law would not directly apply to a labor arbitration unless the erasure statute represented a "dominant public policy"; labor arbitration is fundamentally and mandatorily governed by federal law and the parties' agreement. Whether or not the grievant's arrest record could be introduced in evidence in a discharge arbitration is really a question of contract interpretation, and therefore it need not be decided in accordance with Connecticut law because of the fortuitous location of a workplace at a post office in Connecticut (unless the agreement incorporated Connecticut law). The Postal Service, like most large employers, will have collective bargaining agreements in many states, and it would be expected that much of the same contractual language would be found in various locations throughout the country, though local laws governing police records vary widely. In sum, an arbitrator's interpretation of a collective bargaining agreement can be overridden by a state statute only if that statute is incorporated into federal law because it reflects dominant public policy.

\* \* \* \* \* \*

Accordingly, we uphold the district court's refusal to vacate the arbitrator's award and the grant of appellee's motion to dismiss or alternatively for summary judgment.