**APOGEE COAL CO., Lone Mountain Processing, Inc., and Cumberland River Coal Co., Plaintiffs and Counter-defendants,**

v.

**INTERNATIONAL UNION, UNITED MINE WORKERS OF AMERICA, Defendant and Counter-claimant.**

**No. CIV.A. 98–558(SS).**

United States District Court, District of Columbia.

June 11, 1998.

alone.

Ellen Moran Dwyer, Crowell & Moring, L.L.P., Washington, DC, for Plaintiffs.

Deborah Stern, Washington, DC, for Defendant.

## *MEMORANDUM OPINION*

SPORKIN, District Judge.

This matter comes before the Court on the Plaintiffs and Defendant's cross motions for summary judgment. Plaintiff Apogee Coal Company produces bituminous coal in Illinois, West Virginia, and Kentucky. Apogee is a wholly-owned subsidiary of Arch Coal, Inc. Plaintiffs Lone Mountain Processing, Inc. and Cumberland River Coal Company are wholly-owned subsidiaries of Catenary Coal Holdings, Inc., which in turn is a wholly-owned subsidiary of Arch Coal. Defendant United Mine Workers of America ("UMWA") represents Apogee's employees for collective bargaining purposes. In 1993, the UMWA and Apogee, together with other members of the Bituminous Coal Operators Association ("BCOA") negotiated the National Bituminous Coal Wage Agreement of 1993 ("NBCWA"), a collective bargaining agreement that set the terms and conditions of employment for UMWA members employed at signatory operations. Neither Lone Mountain nor Cumberland River is a signatory or bound by the provisions of the NBCWA.

Following the negotiation of the NBCWA, Apogee negotiated a Memorandum of Understanding Regarding Job Opportunities (the "MOU") with the UMWA. Apogee executed the MOU as an agent of its parent corporation, Arch Coal, and Arch's nonsignatory coal companies, including Lone Mountain and Cumberland River. The MOU requires nonsignatory operators, including Lone Mountain and Cumberland River, to offer the first three out of every five new job openings to laid-off or active Apogee miners. Pursuant

to the terms of the MOU, disputes alleging a breach of its terms are arbitrated by Mr. William J. Usery, the Chairman of the Labor Management Policy Committee ("LMPC").

On May 27, 1997, the Defendant, UMWA, filed a complaint with Mr. Herbert Fishgold (the person designated by Chairman Usery to monitor compliance with the MOU) claiming that Lone Mountain and Cumberland River had breached the MOU by failing to hire three applicants who were members of Apogee. UNWA claimed that Loan Mountain and Cumberland River had discriminated against three employees at Apogee because of their union activity. Cumberland River and Loan Mountain claimed that the applicants failed to pass mandatory equipment tests. A hearing was held before Mr. Fishgold, who issued a Proposed Decision and Award on October 17, 1997. Mr. Fishgold's Proposed Decision found that neither Lone Mountain nor Cumberland River denied employment to the three Miner Applicants because of their union activity. Although he found no discrimination, Mr. Fishgold ordered Lone Mountain and Cumberland River to, among other things, provide the three applicants with an opportunity to re-take the equipment tests, to have a non-employee UMWA representative observe the equipment tests, and to have a 60-day trial period to demonstrate that the applicants were qualified for the position. *See* Job Monitor's Proposed Decision and Award (Oct. 17, 1997), at 14. The Plaintiffs objected to the Proposed Decision and Award and the Defendant filed its responses.

On February 8, 1998, Mr. Usery issued a Final Decision. In his Decision, Chairman Usery, like Mr. Fishgold, concluded that the three applicants had not been discriminated against because of their union activity. However, the Chairman held that Lone Mountain and Cumberland River could not disqualify MOU applicants solely because they failed regularly-administered equipment tests. *See* Final Decision of the Chairman: Findings of Fact, Conclusions, and Remedy (Feb. 9, 1998) ("Final Decision"), at 12. As a remedy, the Chairman ordered Lone Mountain to allow the three applicants to re-take its equipment tests. *See id.* at 13. In the event they

again failed the tests, he ordered Lone Mountain to hire each applicant for a trial period of 60 days to see whether they were qualified for a position. *See id.* at 13–14.

▮ The Plaintiffs claim that the Chairman exceeded the scope of his jurisdiction. The Plaintiffs do not contest the Chairman's jurisdiction to determine the issue of whether the Plaintiffs had discriminated against the applicants. The Plaintiffs claim that the Chairman's jurisdiction was limited only to this issue because this was the sole issue raised in the complaint before Mr. Fishgold. The Plaintiffs argue that the Chairman went beyond this issue when he determined that the Plaintiffs had improperly excluded the applicants based exclusively on the test results. Accordingly, the Plaintiffs request that the Court vacate all those portions of the Chairman's award dealing with this "extraneous" issue and affirm the Chairman's finding that the Plaintiffs had not discriminated against the applicants.

▮ " '[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit,' " *AT & T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (quoting *United Steelworkers v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). The issue in this case concerns Chairman Usery's interpretation of the scope of the complaint: Was the complaint narrowly limited to the question of whether the Plaintiffs discriminated against the applicants? Or was it broader, involving general issues about the hiring process for the job opportunities provided for in the MOU? The Court's scope of review of an arbitrator's decision is "extremely narrow." *American Postal Workers Union, AFL–CIO v. U.S. Postal Service,* 52 F.3d 359, 361 (D.C.Cir.1995). In reviewing arbitration awards, the courts are limited to determining whether the arbitrator grossly deviated from the authority conferred on him by the labor agreement or from the issues submitted for arbitration. *OPEIU v. Wash. Metro. Area Transit Authority,* 724 F.2d 133, 140 (D.C.Cir.1983). "[A]s long as the arbitrator is even arguably construing or ap-

plying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Paperworkers v. Misco*, 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). In a recent case, the Court of Appeals held that an "arbitrator's view of the issues submitted to him for arbitration . . . receives the same judicial deference as an arbitrator's interpretation of a collective bargaining agreement." *Madison Hotel v. Hotel and Restaurant Employees*, 144 F.3d 855 (D.C.Cir.1998), at 3 (slip opinion) (en banc).[1]

In this case, the Plaintiffs argue that the plain language of the Defendant's complaint limits it to the narrow issue of whether the applicants had been discriminated against because of their union activity. However, the language of the complaint is broader than the Plaintiff claims, as indicated by the following excerpt:

> During your personal interview with some of these members you were told in detail how they had performed various jobs for many years while employed at Arch of Ky. but were refused the same jobs at the non-union operations based on their test results. . . . In early 1997 Arch of Kentucky did in fact post certain jobs at the Lone Mountain and Pardee Mines. This time, three active miners with Arch of Kentucky bid on the jobs. Mr. James Talbot, Mr. James Thomas, and Mr. Cecil Foutch were called to these mines for their fair and objective tests. Guess what happened. That's right. They failed the test. Complaint to Mr. Fishgold from Kenny Johnson, Field Representative (May 27, 1997), at 1.

While the complaint suggests discrimination, its primary focus is on the tests. Chairman Usery's interpretation of the complaint as extending to the issue of testing is reasonable. The complaint alleges that, in spite of the MOU's requirement of job opportunities, the Apogee applicants were not being treated fairly in the hiring process. While finding that the applicants were not denied jobs because of discrimination, Chairman Usery found that the Plaintiffs were still in violation of the MOU because of their improper exclusive reliance on tests results: "[B]ased upon a review of the facts and after a careful consideration of established arbitral standards applied to similar language regarding 'ability' arising under the NBCWA, the Chairman does not believe that Lone Mountain or Band Mill, non-signatories covered by the MOU, can rely on test results as the sole determining factor of ability." Final Decision, at 10–11. The Chairman found that while there was no discriminatory intent in using the tests, the applicants "should not have been disqualified from further consideration for jobs at Lone Mountain or Band Mill merely on the basis of not having passed hands-on tests during the pre-employment phase." *Id.* at 13.

It is certainly reasonable to consider the issue of the Plaintiffs' exclusive reliance on the test results as within the scope of the complaint. The exclusive reliance on the tests directly affected the job opportunities required by the MOU. The MOU would be a meaningless document if it required only the nominal offering of job opportunities, permitting the Plaintiffs to use hiring procedures that are unfair and improper. In sum, the complaint can reasonably be interpreted as raising issues relating to the tests, and the Court will sustain the Chairman's interpretation of the scope of the complaint.

■ The Plaintiffs also claim that the Chairman's remedy of a 60–day trial period is contrary to the terms of the MOU, which states that applicants must "have the ability to step into and perform the work of the job at the time the job is awarded." MOU, at para. 6. The Court concludes that the Chairman's interpretation of the MOU as consistent with this remedy is reasonable. The Plaintiffs' argument rests upon their assumption that the test results are an adequate indicator of the applicants' ability to perform

---

1. Plaintiffs rely heavily upon the panel's decision in *Madison Hotel*, 128 F.3d 743 (D.C.Cir.1997), which was reversed by the Court of Appeals en banc. *See Madison Hotel v. Hotel and Restaurant Employees*, 144 F.3d 855 (D.C.Cir.1998), at 3 (slip opinion) (en banc). In contrast to the panel's decision, the en banc decision articulates a very deferential standard of review for the arbitrator's interpretation of the scope of the issues submitted to him.

the job. However, the Chairman's conclusion was that the reliance on these test results alone was improper because it was not an adequate measure of the applicants' ability. The Chairman's remedy of a 60–day trial period is a carefully-crafted compromise, one that is quite fair to all the parties concerned. It is designed as a way to determine the applicants' ability to perform the job in lieu of test results alone; as such, it is clearly within the scope of the MOU. In all respects, this Court finds no reason to quarrel with the good judgment of Chairman Usery, and affirms his Final Decision in full.