DECISION AND JUDGMENT ENTRY
{¶ 1} Marilyn Kindig appeals from a Washington County Common Pleas Court judgment that confirmed an arbitration award entered on April 14, 2004. On appeal, she challenges the trial court's order vacating the first arbitration award and remanding the case for a new arbitration hearing. She argues the court erred in vacating the award because of the arbitrator's refusal to postpone the arbitration hearing. Specifically, she argues that the arbitrators did not commit misconduct when they denied Selby General Hospital's request to postpone the hearing. We agree. Because there is a reasonable basis for the arbitrators' decision not to postpone the hearing, we conclude the arbitrators were not guilty of misconduct. Accordingly, the trial court erred in vacating the arbitration award on this basis.
 {¶ 2} In the event we found merit in Kindig's assignments of error, Selby offered a cross-assignment of error to prevent reversal of the trial court's decision. Initially, Selby argues that several non-statutory grounds support vacatur of the first award. However, because R.C. 2711.10 provides the sole grounds for vacating an arbitration award, this argument has no merit. Selby also argues that the award is subject to vacatur under R.C.2711.10(A), which provides that the trial court shall vacate an arbitration award if it "was procured by * * * undue means." However, because Selby failed to establish that Kindig acted with malice when she disclosed her expert after the deadline, we conclude this argument has no merit. Finally, Selby argues the award is subject to vacatur under R.C. 2711.10(D), which provides that the trial court shall vacate an award if the arbitrators "exceeded their powers * * *." However, the arbitrators could reasonably conclude that the expert evidence Selby wished to submit would be merely cumulative of testimony already offered. Thus, the arbitrators were not guilty of misconduct in refusing to permit Selby to submit this additional expert evidence. Nor did they exceed their powers by issuing an award without hearing the evidence. Accordingly, we conclude this argument has no merit. Because none of the alternative bases advanced by Selby support vacatur of the award, we reverse the trial court's judgment and remand for further proceedings.
 I. {¶ 3} In 1997, Marilyn Kindig was looking for a place to begin her medical career upon completion of her residency. That spring, she entered into a contract with Selby General Hospital in Marietta, Ohio. The contract provided for the payment of a $25,000 signing bonus, which Kindig received in 1997. It also provided that Selby would either locate or build "suitable office space" for Kindig before she started her practice the following year. Although Kindig and Selby attempted to find suitable office space, their efforts were unsuccessful. Thus, Selby agreed to construct a new office building to house Kindig's practice.
 {¶ 4} Soon after Selby agreed to construct the new building, Kindig and her husband learned that Selby was experiencing financial difficulties. Concerned, Kindig's husband wrote to Selby's Chief Executive Officer, James Cliborne, about the effect this financial situation would have on Kindig's contract. In February 1998, Mr. Cliborne informed Kindig that Selby's financial situation would impact its ability to begin construction of the new building in the time frame originally anticipated. Upon hearing this, Kindig traveled to Marietta where she learned that Selby was not constructing an office building for her. She immediately withdrew her request for hospital privileges and contacted a recruiter. She also retained an attorney who wrote to Selby demanding assurance that it would perform under the contract. When Selby did not respond to her attorney's letter, Kindig entered into a contract with Lima Memorial Hospital.
 {¶ 5} In early 2000, Selby requested arbitration to recover the $25,000 signing bonus it had paid to Kindig.[1] Kindig responded by filing a counterclaim alleging that Selby anticipatorily breached the contract. On October 25, 2000, the American Arbitration Association ("AAA") assigned the case to a panel of three arbitrators. Three months later, the arbitrators issued a scheduling order setting the hearing for June 19, 2001. The order required Kindig to disclose her witnesses by March 23, 2001. Moreover, it provided that all deadlines would be "strictly enforced".
 {¶ 6} In February 2001, Kindig submitted her initial witness disclosure. Although the witness list did not identify any expert witnesses, it indicated that Kindig intended to call an "expert economist yet to be identified." Additionally, Kindig reserved the right to add expert witnesses to the list as discovery continued. On March 23, 2001, Kindig filed her supplemental witness disclosure. This list also failed to identify any expert witnesses. However, like the first list, it indicated that Kindig intended to call an "expert economist yet to be identified." Again, Kindig reserved the right to add expert witnesses to the list.
 {¶ 7} On May 31, 2001, the arbitrators issued a revised scheduling order setting the hearing for August 8, 2001. This second order required the parties to disclose their witnesses by July 6, 2001. In addition, it stated that all deadlines would be "strictly enforced". On July 6, 2001, Kindig submitted her witness disclosure. The list did not identify any expert witnesses, nor did it mention an expert economist. Rather, it stated that Kindig intended to call "[a]ny and all * * * expert witnesses not yet identified."
 {¶ 8} The arbitrators subsequently continued the hearing until November 13, 2001. One month before the hearing, on October 11, 2001, Kindig informed Selby that she planned to call Heinz Ickert as an expert witness. Selby immediately wrote to Kindig expressing its disapproval. It indicated that fairness required either (1) that it be permitted to depose Mr. Ickert and, if necessary, retain an expert of its own or (2) that Mr. Ickert's testimony be precluded. Kindig responded by scheduling Mr. Ickert's deposition for October 23, 2001. However, the day before the deposition, Kindig informed Selby that Mr. Ickert would not be able to provide his final opinions at the deposition. Therefore, the parties rescheduled the deposition for November 1, 2001. On October 31, 2001, Kindig provided Selby with Mr. Ickert's report. Selby immediately canceled Mr. Ickert's deposition, stating that it did not have adequate time to prepare for the deposition.
 {¶ 9} On November 5, 2001, Selby filed a motion to continue the arbitration hearing. The motion asserted that Kindig's untimely disclosure of her expert placed Selby at a disadvantage. It sought a continuance so that Selby could retain an expert of its own. On November 6, 2001, the arbitrators denied Selby's motion. However, they indicated that if, at the hearing, Selby could convince them that it had been prejudiced, they would adjourn the hearing and accept expert testimony at a later date. The matter proceeded to arbitration on November 13, 2001. At the end of the two-day hearing, the arbitrators stated that they would leave the hearing open for a week. They told Selby that they would then "make a decision as to whether this additional expert should be permitted to testify, if you retain one." On November 20, 2001, Selby informed the arbitrators that it wished to retain "an independent counter-expert". The arbitrators denied Selby's request. On February 22, 2002, the arbitrators issued a decision denying Selby's claim and awarding Kindig $313,329.09 on her counterclaim.
 {¶ 10} On April 3, 2002, Selby filed a motion asking the Washington County Court of Common Pleas to vacate the arbitrators' award. Kindig responded by filing a motion to confirm the arbitrators' award. In July 2002, the trial court granted Selby's motion, vacated the arbitrators' award, and remanded the case for a new arbitration hearing. The court found that the arbitrators' failure to strictly enforce their deadlines "resulted in manifest unfairness to [Selby]." Additionally, it found that Kindig's "extremely untimely" designation of Mr. Ickert violated the orders established by the arbitrators and resulted in "arbitration by ambush." The trial court concluded that the arbitrators committed misconduct by allowing Mr. Ickert's testimony and denying Selby's request to postpone the hearing. Kindig appealed this decision, but we dismissed the appeal for lack of a final, appealable order.[2]
 {¶ 11} In January 2004, a second arbitration hearing was held before a new panel of arbitrators. On April 14, 2004, the arbitrators issued a decision denying Selby's claim and awarding Kindig $267,329.09 on her counterclaim. Selby subsequently filed a motion asking the trial court to confirm the arbitrators' award. On December 13, 2004, the court issued a judgment entry confirming the arbitration award entered on April 14, 2004. Kindig now appeals that judgment and challenges the order that vacated the first arbitration award. She presents the following assignments of error for our review:
 {¶ 12} "I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN VACATING THE ARBITRATION AWARD BECAUSE SELBY FAILED TO SHOW, AND THE TRIAL COURT FAILED TO FIND, THE EXISTENCE OF ALL THREE MANDATORY ELEMENTS NEEDED FOR VACATING AN AWARD UNDER R.C.2711.10(C).
 {¶ 13} II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY IGNORING OHIO LAW WHICH REQUIRES CONSTRUING ARBITRATION AWARDS AS VALID WHENEVER POSSIBLE."
 {¶ 14} In the event that we find grounds for reversal, Selby asserts the following cross-assignment of error for our review:
 {¶ 15} "I. ALTHOUGH IT REACHED THE CORRECT RESULT IN VACATING THE FEBRUARY 22, 2002 ARBITRATION AWARD, THE TRIAL COURT ERRED IN ITS DECISION BY FAILING TO FIND THAT ADDITIONAL STATUTORY GROUNDS, AS WELL AS CERTAIN NON-STATUTORY GROUNDS, SUPPORTED VACATUR OF THE ARBITRATION AWARD."
 II. A. Kindig's First Assignment of Error {¶ 16} In her first assignment of error, Kindig argues the trial court erred in vacating the arbitration award because of the arbitrators' refusal to postpone the hearing.
 {¶ 17} It is the policy of the law to favor and encourage arbitration. Mahoning Cty. Bd. of Mental Retardation Dev.Disabilities v. Mahoning Cty. TMR Edn. Assn. (1986),22 Ohio St.3d 80, 84, 488 N.E.2d 872. Consequently, arbitration awards are presumed valid. Findlay City School Dist. Bd. of Edn. v.Findlay Edn. Assn. (1990), 49 Ohio St.3d 129, 131,551 N.E.2d 186. "The jurisdiction of courts to review arbitration awards is * * * statutorily restricted; it is narrow and it is limited."Miller v. Gunckle, 96 Ohio St.3d 359, 2002-Ohio-4932,775 N.E.2d 475, at ¶ 10, quoting Warren Edn. Assn. v. Warren CityBd. of Edn. (1985), 18 Ohio St.3d 170, 480 N.E.2d 456. Under R.C. 2711.10, a trial court can vacate an arbitration award only if:
(A) The award was procured by corruption, fraud, or undue means.
(B) There was evident partiality or corruption on the part of the arbitrators, or any of them.
(C) The arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
(D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
 {¶ 18} Appellate review of an arbitration award is confined to an evaluation of the order issued by the trial court.Northern Ohio Sewer Contrs. v. Bradley Dev. Co.,159 Ohio App.3d 794, 2005-Ohio-1014, 825 N.E.2d 650, at ¶ 17; Lynch v.Halcomb (1984), 16 Ohio App.3d 223, 224, 475 N.E.2d 181. The substantive merits of an arbitration award are not reviewable on appeal absent evidence of material mistakes or extensive impropriety. Brumm v. McDonald Co. Secs., Inc. (1992),78 Ohio App.3d 96, 104, 603 N.E.2d 1141; Lynch.
 {¶ 19} The trial court found that the arbitrators committed misconduct when they denied Selby's request to postpone the arbitration hearing. See R.C. 2711.10(C). Kindig argues that this conclusion is erroneous. She contends Selby failed to present the arbitrators with sufficient cause to postpone the hearing. In addition, she contends Selby failed to establish that the arbitrators were guilty of misconduct in refusing to postpone the hearing. Finally, she contends Selby failed to show that it was prejudiced by the arbitrators' refusal to postpone the hearing.
 {¶ 20} Both parties in this case failed to comply with the witness disclosure deadlines contained in the arbitrators' scheduling orders. Selby filed both of its witness lists after the established deadlines.[3] And while Kindig filed her witness lists within the deadlines, she did not identify any expert witnesses. Instead, she waited until one month before the hearing to inform Selby that she would be calling Mr. Ickert as an expert.
 {¶ 21} In her brief, Kindig argues that her disclosure of Mr. Ickert was not untimely. She notes that under the second scheduling order, the deadline for witness disclosure was 32 days before the scheduled hearing. She claims that the continuance of the second hearing date also resulted in a continuance of the witness disclosure deadline. Thus, she asserts that her disclosure of Mr. Ickert was timely since it occurred 32 days before the arbitration hearing on November 13, 2001.
 {¶ 22} Although Kindig's argument is creative, it has no merit. Continuance of the scheduled hearing date does not automatically result in a continuance of the witness disclosure deadline. The arbitrators are free to continue the arbitration hearing without also continuing the deadline for witness disclosure. Indeed, it appears that is what happened here. When the arbitrators continued the first hearing date, they issued a revised scheduling order setting forth a new deadline for witness disclosure. However, when they continued the second hearing date, they did not issue a new scheduling order. Accordingly, the deadlines from the second scheduling order remained in effect. Because Kindig did not disclose Mr. Ickert by July 6, 2001, as required in the second scheduling order, her disclosure was untimely. However, despite this untimely disclosure, we are not convinced the arbitrators committed misconduct in refusing to postpone the hearing.
 {¶ 23} The decision to grant or deny a continuance is largely discretionary. Michael v. American Arbitration Assn. (Aug. 17, 1999), Franklin App. No. 98AP-1317; Vet-O-Vitz Masonry Systems,Inc. v. Schnabel Assoc., Inc. (Aug. 25, 1988), Cuyahoga App. Nos. 54261, 54262. If any reasonable basis exists for the arbitrators' decision not to postpone the hearing, the courts will not intervene. DVC-JPW Investors v. Gershman (C.A.8 1993),5 F.3d 1172, 1174 (addressing Section 10(a)(3), Title 9, U.S. Code, which contains language identical to that in R.C.2711.10(C)). See, also, 3 Oehmke, Commercial Arbitration (3 Ed. 2003), 143-1, Section 143:1.
 {¶ 24} At the time Selby filed its motion for a continuance, the case had been assigned to the arbitration panel for over a year and had already been continued twice. Although untimely, Kindig's disclosure of her expert occurred more than a month before the scheduled hearing. This gave Selby adequate time to consult with an expert. In fact, Kindig's disclosure of her expert gave Selby the same amount of time as that agreed to under the second scheduling order. In addition, although Kindig did not provide Selby with her expert's report until October 31st, Selby had sufficient time to analyze the report in preparation for the hearing. We note that the basis for Mr. Ickert's opinion should not have come as a surprise to Selby. Kindig's motion in opposition to the continuance included a damages calculation sheet that she had provided in response to an interrogatory. The damages sheet indicated that Kindig sought compensation for expenses that she claimed she would have been reimbursed under her contract with Selby. These same reimbursable expenses formed the basis for Mr. Ickert's opinion as to Kindig's damages.
 {¶ 25} Finally, the arbitrators' order was not a simple refusal to postpone the arbitration hearing. Rather, the arbitrators indicated that they would adjourn the hearing to accept additional expert testimony if at the hearing, Selby could convince them it had been prejudiced. Thus, the order left open the possibility that the hearing could be adjourned later, if necessary.
 {¶ 26} After considering the evidence, we conclude there is a reasonable basis for the arbitrators' decision not to postpone the hearing. See Gershman, supra. Arbitration is designed to provide an efficient, expedited, and economical remedy to resolve disputes. See Buyer's First Realty, Inc. v. Cleveland Area Bd.of Realtors (2000), 139 Ohio App.3d 772, 779, 745 N.E.2d 1069. See, also, Mahoning Cty. Bd. of Mental Retardation,22 Ohio St.3d at 83 ("[Arbitration] provides the parties with a relatively speedy and inexpensive method of conflict resolution * * *."). This case had been pending for close to two years. It had been assigned to the arbitrators for over a year and had already been continued twice. Moreover, Kindig's disclosure of her expert occurred more than a month before the arbitration hearing. While this may have been inadequate time in the litigation context, it gave Selby adequate time to prepare for the less formal arbitration process. See 1 Oehmke, Commercial Arbitration (3 Ed. 2003) 1-5, Section 1:5 ("Arbitration acts as a speedy and informal alternative to litigation * * *."). Finally, the arbitrators did not rule out the possibility of adjourning the arbitration hearing later, if necessary.
 {¶ 27} While we might have ruled differently had we been in the arbitrators' position, we cannot say, given the evidence, that the arbitrators were guilty of misconduct in refusing to postpone the hearing. Therefore, we conclude that the trial court erred in vacating the arbitration award on this basis. Accordingly, we sustain Kindig's first assignment of error.
 B. Kindig's Second Assignment of Error {¶ 28} In her second assignment of error, Kindig argues that the trial court's decision vacating the arbitration award contravenes the public policy favoring arbitration. She contends the decision undermines the finality of arbitration. Additionally, she contends the decision diminishes the effectiveness of arbitration. However, because we have sustained Kindig's first assignment of error, we need not address this second assignment of error. See App.R. 12(A)(1)(c).
 C. Selby's Cross-Assignment of Error {¶ 29} In the event we found merit in Kindig's assignments of error, Selby offered a cross-assignment of error to prevent reversal of the trial court's judgment. See R.C.2505.22.[4] In the cross-assignment of error, Selby argues that several statutory and non-statutory grounds support vacatur of the first arbitration award.
 {¶ 30} Initially, Selby contends the R.C. 2711.10 grounds for vacating an arbitration award are not exclusive. Selby asserts that Ohio law also recognizes several non-statutory grounds for vacating an arbitration award. We disagree. In Warren Edn.Assn., 18 Ohio St.3d 170, 173, the Supreme Court of Ohio held: "[T]he vacation, modification or correction of an award may only be made on the grounds listed in R.C. 2711.10 and 2711.11 * * *. The jurisdiction of the courts to review arbitration awards is thus statutorily restricted; it is narrow and it is limited." See, also, Miller, 96 Ohio St.3d 359, at ¶ 10, citing Schaeferv. Allstate Ins. Co. (1992), 63 Ohio St.3d 708, 711,590 N.E.2d 1242. Likewise, we have previously noted: "Once an arbitration award is finalized, a trial court has `no jurisdiction except to confirm, vacate, modify, or enforce the award, and only on the terms provided by statute * * *.'" Fraternal Order of Police,Ohio Labor Council, Inc. v. Athens, Athens App. No. 01CA18, 2001-Ohio-2621, quoting Lockhart v. American Res. Ins. Co.
(1981), 2 Ohio App.3d 99, 103, 440 N.E.2d 1210. Because R.C.2711.10 provides the sole grounds for vacating arbitration awards, our review is limited to those circumstances set forth in the statute. See University Mednet v. Blue Cross Blue Shieldof Ohio (1997) 126 Ohio App.3d 219, 231-232, 710 N.E.2d 279. Accordingly, we find no merit in Selby's argument that non-statutory grounds support vacatur of the arbitration award.
 {¶ 31} Selby also argues that the award is subject to vacatur under R.C. 2711.10(A), which provides that the common pleas court shall vacate an arbitration award if it "was procured by corruption, fraud, or undue means." Selby contends the arbitration award at issue was procured by undue means. It argues that "an arbitration award has been procured by undue means when the process leading to the award reveals particularly egregious procedural irregularities or procedural unfairness." To support its argument, Selby relies on a law review article that contends a broad reading of the term "undue means" is one way to protect the parties' procedural rights. See Brunet, Arbitration and Constitutional Rights (1992), 71 N.C.L.Rev. 81, 114-115 (addressing Section 10(a)(1), Title 9, U.S. Code, which contains language identical to that in R.C. 2711.10(A)). However, our research reveals that courts are not inclined to read the term "undue means" this broadly.
 {¶ 32} The Supreme Court of Ohio has never specifically addressed the meaning of the term "undue means" for purposes of R.C. 2711.10(A). Relying on Goodyear Tire Rubber Co. v. LocalUnion No. 200 (1975), 42 Ohio St.2d 516, 330 N.E.2d 703, however, both the Eighth and Tenth District Courts of Appeals have held that the term involves some degree of malice. SeeBailey v. Ohio Dept. of Transp., Cuyahoga App. No. 80818, 2002-Ohio-6221, at ¶ 18; Detty v. Ohio Dept. of Rehab. andCorr. (July 6, 2000), Franklin App. No. 99AP-1159. They note that the Supreme Court of Ohio "has determined that a trial court's review of an arbitration award is limited `to claims of fraud, corruption, misconduct, an imperfect award, or that the arbitrator exceeded his authority.'" Bailey; Detty (both quoting Goodyear). In Detty, the court explained: "Goodyear
and its progeny consistently interchange the term `undue means' with `misconduct'. Thus, R.C. 2711.10(A) has consistently been interpreted to include some degree of malice." (Citations omitted.)
 {¶ 33} Like R.C. 2711.10(A), Section 10(a)(1), Title 9, U.S. Code also provides that a trial court may vacate an arbitration award "where the award was procured by corruption, fraud, or undue means[.]" Federal courts addressing the term "undue means" have held that it is limited to conduct "equivalent in gravity to corruption or fraud * * *." See American PostalWorkers Union, AFL-CIO v. United States Postal Serv. (C.A.D.C. 1995), 52 F.3d 359, 362. See, also, 3 Oehmke, Commercial Arbitration (3 Ed. 2003), 141-1, Section 141:1 ("To understand `undue means' as a basis for vacatur, these words must be read in conjunction with `fraud' and corruption' that precede it in the statute.") Indeed, the Ninth Circuit Court of Appeals has held that the term "connotes behavior that is immoral if not illegal."A.G. Edwards Sons, Inc. v. McCollough (C.A.9 1992), 697 F.2d 1401, 1403, citing Black's Law Dictionary (4 Ed.Rev. 1968) 1697.
 {¶ 34} Although Kindig's untimely disclosure of her expert was improper, it was not illegal or immoral. See McCollough.
Nor was her conduct equivalent in gravity to corruption or fraud. See American Postal Workers Union. In its brief, Selby argues that procedural irregularities and unfairness in the case resulted in an arbitration award obtained by undue means. However, Selby does not allege that Kindig acted with malice when she disclosed her expert after the established deadline. Nor is there clear evidence of malice in the record before us. The record indicates that Kindig changed legal counsel sometime after the second scheduling order but before the witness disclosure deadline established in the order. And while this change in legal counsel does not excuse Kindig's untimely disclosure, it might explain it. Because Selby has failed to establish that the first arbitration award was procured by undue means, we conclude the award is not subject to vacatur under R.C. 2711.10(A). Accordingly, we conclude that Selby's argument lacks merit.
 {¶ 35} Finally, Selby argues that the award is subject to vacatur under R.C. 2711.10(D), which provides that the common pleas court shall vacate an arbitration award if the arbitrators "exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made."
 {¶ 36} It is well-established that an arbitrator will not be found to have exceeded his or her authority so long as the award "draws its essence" from the underlying agreement. See FindlayEdn. Assn., 49 Ohio St.3d at 132. An award draws its essence from the agreement "when there is a rational nexus between the agreement and award, and where the award is not arbitrary, capricious, of unlawful." See Mahoning Cty. Bd. of MentalRetardation, 22 Ohio St.3d at 83-84.
 {¶ 37} Selby never argues that the arbitrators' award does not draw its essence from the underlying contract. Rather, Selby contends the arbitrators erred in not allowing it to present expert evidence addressing Mr. Ickert's opinions. It argues that the arbitrators exceeded their authority by entering an award without hearing this evidence.
 {¶ 38} Although Selby challenges its inability to present expert evidence under R.C. 2711.10(D), the argument is more properly placed under R.C. 2711.10(C). The relevant portion of that section provides that the trial court shall vacate an arbitration award if the arbitrators "were guilty of misconduct * * * in refusing to hear evidence pertinent and material to the controversy * * *." R.C. 2711.10(C). Addressing this same standard under the federal statute, the United States Court of Appeals for the First Circuit has held:
The arbitrator is the judge of the admissibility and relevancy of evidence submitted in an arbitration proceeding. The arbitrator is not bound to hear all of the evidence tendered by the parties; however, he must give each of the parties to the dispute an adequate opportunity to present its evidence and arguments. * * * Every failure of an arbitrator to receive relevant evidence does not constitute misconduct requiring vacatur of an arbitrator's award. A * * * court may vacate an arbitrator's award only if the arbitrator's refusal to hear pertinent and material evidence prejudices the rights of the parties to the arbitration proceedings. An arbitration award must not be set aside for the arbitrator's refusal to hear evidence that is cumulative or irrelevant. Vacatur is appropriate only when the exclusion of relevant evidence `so affects the rights of a party that it may be said that he was deprived of a fair hearing.'
Hoteles Condado Beach, La Concha and Convention Ctr. v. UnionDe Tronquistas Local (C.A.1 1985), 763 F.3d 34, 39-40 (Citations omitted).
 {¶ 39} The dispute about Kindig's damages centered on the terms of her contract with Selby. Both the Selby and Lima contracts were income guarantee contracts whereby the hospitals would, if necessary, loan Kindig sufficient money so that her income would not fall below a designated monthly minimum. The Lima contract guaranteed Kindig a monthly "net practice income" of $20,834. It determined the amount of her net practice income by deducting her reasonable business expenses from her gross collections. The Selby contract guaranteed Kindig $25,000 a month in "net collections", which it defined as "the cash collections from the practice". Selby argued that its contract functioned in the same manner as Lima's contract, i.e., it determined Kindig's net collections by deducting her business expenses from her gross collections. Kindig, however, disagreed. She argued that in addition to the monthly income guarantee, Selby's contract also would have reimbursed her for certain business expenses, up to a capped amount.
 {¶ 40} At the arbitration hearing, Kindig called Heinz Ickert, a certified public accountant, as an expert. Mr. Ickert testified that the main difference between the Selby and Lima contracts was the business expense reimbursements provided for in the Selby contract. Using the lesser of the contract's capped amount or Kindig's actual expenses in Lima, Mr. Ickert concluded that Kindig suffered damages in the amount $317,000. To rebut this evidence, Selby called Debra Cunningham, who testified that she is responsible for negotiating and administering Selby's contracts with the physicians.[5] Ms. Cunningham indicated that she reviewed the Selby and Lima contracts and determined that both contracts functioned in a similar manner. Specifically, Ms. Cunningham testified that Selby's monthly income guarantee was based on a net figure obtained by deducting Kindig's business expenses from her gross collections. She ultimately concluded that Kindig did not suffer any damages since the Lima contract was the better contract overall.
 {¶ 41} At the conclusion of the hearing, the arbitrators and the parties discussed whether the arbitration hearing should be adjourned so that Selby could present additional expert testimony. During the discussion, Selby's counsel acknowledged that it would be pointless to submit additional expert evidence if the issue was a matter of contract interpretation.[6]
Arbitrator Jordan agreed, stating: "I think the panel clearly understands the difference in the contract which separates the parties. I don't think we would instruct you to bring in some other expert that's going to testify to the position already offered." However, Arbitrator Jordan continued: "If there is something — if there's an approach mathematically that their expert took that you haven't had time to properly review because of the procedure that took place, I think we're going to afford you the opportunity to take that review and advise us of the fact if you want to come back and make a different assessment of his testimony." In the end, the arbitrators adjourned the hearing for one week. They stated that if, in that time, Selby indicated that it wished to retain an expert and present additional expert testimony, they would consider the request.
 {¶ 42} On November 20, 2001, Selby informed the arbitrators that it wished to retain an "independent counter-expert" to provide further analysis of the two contracts. Selby argued that Mr. Ickert's conclusions on damages were unsupportable, stating:
Mr. Ickert mistakenly believes that Selby's costs in covering Dr. Kindig's business expenses would somehow relate to her claim for damages, even though her damages, if any, must necessarily be directly related to proof of loss of income based upon the income guarantee. Such a conclusion makes absolutely no sense at all. The cost to Selby under the contract has nothing to do with any damages that Dr. Kindig might claim.
In addition, Selby argued: "Mr. Ickert failed to consider that unlike the Lima Memorial contract, the Selby contract did not propose to cover all of Dr. Kindig's expenses, only some of them. Thus, Dr. Kindig would have been required to pay for certain expenses on her own under the Selby agreement." Selby requested an additional 30 days to provide the arbitrators with a written report from a qualified expert or, in the alternative, to present further testimony at a hearing. However, the arbitrators denied Selby's request to submit additional expert evidence.
 {¶ 43} Selby contends the arbitrators erred in not permitting it to prepare and submit expert evidence addressing Mr. Ickert's position. It argues that the refusal to allow this expert evidence deprived it of a fair hearing. We disagree. At the close of the hearing, the arbitrators indicated that they understood each party's position with respect to the interpretation of the Selby contract. They further indicated that they would not allow Selby to bring in an additional expert to testify to the position already offered. However, they stated that if Selby wished to submit additional expert evidence challenging Mr. Ickert's mathematical approach, they would consider such a request. Despite these statements, Selby did not express a desire to submit expert evidence addressing Mr. Ickert's mathematical approach. Rather, Selby's letter to the arbitrators evidenced a desire to submit expert evidence regarding the interpretation of the contract. Thus, the arbitrators could reasonably conclude that the expert evidence Selby wished to submit would be merely cumulative of testimony offered by Ms. Cunningham. Having reviewed the record, we conclude the arbitrators were not guilty of misconduct in refusing to allow Selby to submit additional expert evidence. Likewise, we find no merit in Selby's argument that the arbitrators exceeded their authority by issuing an award without hearing this additional expert evidence. For the reasons expressed above, we overrule Selby's cross assignment of error.
 {¶ 44} In summary, we conclude that the trial court erred in vacating the first award based on the arbitrators' refusal to postpone the arbitration hearing. Moreover, we conclude the alternate bases advanced by Selby do not support vacatur of the award. Thus, we reverse the trial court's judgment and remand this case for further proceedings. On remand, the trial court shall issue an order confirming the arbitration award entered on February 22, 2002.
JUDGMENT REVERSED AND CAUSE REMANDED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE REVERSED AND CAUSE REMANDED and that the Appellant recover of Appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
Abele, J.: Concurs in Judgment and Opinion as to Assignment of Error I and Concurs in Judgment Only as to Assignment of Error II and Cross Assignment of Error.
Kline, J.: Concurs in Judgment Only.
[1] The parties' contract provided that any controversy or claim arising out of the agreement would be resolved in arbitration.
[2] The Ohio Supreme Court has held: "A trial court order which vacates an arbitration award and orders the parties to select new arbitrators and to conduct a new arbitration proceeding is not a `final appealable order' as defined in R.C. 2505.02." Stewart v.Midwestern Indemn. Co. (1989), 45 Ohio St.3d 124,543 N.E.2d 1200, syllabus.
[3] The arbitrators' first scheduling order required Selby to file its witness disclosure by February 16, 2001. Selby did not file its list until April 12, 2001. The revised scheduling order required both parties to file their witness disclosure by July 6, 2001. Selby did not file its list until July 11, 2001.
[4] R.C. 2505.22 provides, in relevant part: "In connection with an appeal of a final order, judgment, or decree of a court, assignments of error may be filed by an appellee who does not appeal, which assignments shall be passed upon by a reviewing court before the final order, judgment, or decree is reversed in whole or in part."
[5] Ms. Cunningham was not employed by Selby when Kindig entered into her contract. Thus, Ms. Cunningham was not involved in the negotiations between Selby and Kindig.
[6] Selby's counsel stated: "I guess the panel doesn't really need to comment on this unless it feels so inclined. It seems like we're talking about a contract interpretation issue, which is more of a legal issue, and we could bring in as many accountants as lawyers and everybody might have a different idea. I'm not sure we're ever going to end this thing if we keep bringing in accountants and lawyers. * * *."